Andrew D. Bluth (SBN 232387)
Christopher R. Rodriguez (SBN 212274)
Grayson C. Bowman (SBN 367682)
SINGLETON SCHREIBER, LLP
1414 K Street, Ste 300
Sacramento, CA 95814-3966
Telephone: 916-775-5894
Facsimile: 619-255-1515
abluth@singletonschreiber.com
crodriguez@singletonschreiber.com
gbowman@singletonschreiber.com

Maggy Krell (SBN 226675)
3053 Freeport Blvd. #152
Sacramento, CA 95818
maggykrell@gmail.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASSEMBLYWOMAN MAGGY KRELL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security, in his official capacity; DAVID VENTURELLA, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; DOES 1 through 20,<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ASSEMBLYWOMAN MAGGY KRELL ("Plaintiff"), brings this action against the DEPARTMENT OF HOMELAND SECURITY ("DHS"), IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"), DHS Secretary MARKWAYNE MULLIN, in his official capacity ("Mullin"), Acting Director DAVID VENTURELLA, in his official capacity ("Venturella"), and DOES 1-20 (collectively "Defendants") and alleges as follows:

## I. SUMMARY OF THE CASE

1. This action arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., and seeks declaratory and injunctive relief compelling Defendants to disclose agency records concerning the attempted, warrantless entry by federal immigration agents into the Sacramento law firm Morris Law Group, PC on August 14, 2026, together with the guidance, training, authorizations, and communications underlying that operation.

2. On the morning of August 14, 2026, federal agents attempted to enter the offices of Morris Law Group, PC, located at 2414 Del Paso Road in Sacramento. The agents did not present a search warrant or any other judicial authorization. When the building's occupants asked the agents to produce judicial authorization, the agents threatened to return in the middle of the night and break windows.

3. A law office is not an ordinary target of government entry. The attempted search implicated the Fourth Amendment, the attorney-client privilege, and the confidentiality of the firm's clients, including the personally identifiable information of noncitizen crime victims, survivors of trafficking and abuse, and asylum seekers. The U.S. Department of Justice's own Justice Manual imposes heightened safeguards before the government may search an attorney's office. The public has a substantial interest in learning whether, and under what authority and circumstances, ICE attempted to enter a law firm without a warrant.

4. The attempted entry did not occur in a vacuum. In 2026, DHS publicly

directed ICE to expand enforcement against immigration attorneys, ICE has faced litigation across the country challenging warrantless arrests and entries, and guidance widely disseminated to the legal community has confirmed that ICE may not enter the nonpublic areas of an office without consent or a judicial warrant. These developments heighten, rather than diminish, the public's interest in the records Plaintiff seeks.

5. Shortly after learning of ICE's unwarranted invasion of the Morris Law Group offices, Plaintiff submitted a FOIA request to obtain information regarding how the unauthorized ICE activity came to be. The requests were narrow and targeted in their scope.

6. FOIA was enacted to ensure an informed public and to permit meaningful oversight of federal government activity. Rather than honor that mandate, Defendants failed to make any timely determination on Plaintiff's request, failed to rule on her requests for expedited processing and a fee waiver, refused to conduct any search, and unilaterally "administratively closed" the requests while demanding that Plaintiff first supply operational details, such as the identities of the agents and their supervisors, which are uniquely within ICE's own possession.

7. Defendants were required to determine whether to comply with Plaintiff's request within twenty working days, 5 U.S.C. § 552(a)(6)(A)(i), and to determine whether to grant expedited processing within ten calendar days, 5 U.S.C. § 552(a)(6)(E)(ii)(I).

8. Defendant failed to make any such determination, failed to grant expedited processing, failed to rule on the fee-waiver request, and failed to produce any responsive, non-exempt records.

9. Defendants have therefore constructively exhausted Plaintiff's administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).

10. Defendants have failed to conduct a search reasonably calculated to

locate all records responsive to Plaintiff's request and instead refused to search at all.

11. To the extent Defendants have withheld records or portions of records, it has failed to justify any withholding with the specificity FOIA requires and has failed to release reasonably segregable, non-exempt portions of responsive records, as required by 5 U.S.C. § 552(b).

12. Defendant's ongoing failure to comply with FOIA has irreparably harmed Plaintiff and the public by preventing timely access to information concerning federal government activity that is a matter of significant public concern.

## II. PARTIES

13. Plaintiff MAGGY KRELL is a California State Assemblywoman for District 6, which includes large portions of Sacramento and the surrounding area, including 2414 Del Paso Road, the location of Morris Law Group, PC. Plaintiff Krell has a vested interest in understanding federal enforcement activity directed at her constituents and their communities, including the attempted entry into a law firm within her district, and in informing the public and her legislative work about the scope and legality of that activity.

14. Defendant U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the United States and an "agency" within the meaning of 5 U.S.C. § 5 U.S.C. § 552(f), and 5 U.S.C. § 702. One of the primary missions of DHS is to "ensure that the civil rights and civil liberties of persons are not diminished by efforts, activities, and programs aimed at securing the homeland." 6 U.S.C. § 111(b)(1)(G). DHS is the parent agency of ICE and maintains ultimate oversight of the components tasked with the administration and enforcement of the nation's immigration laws. DHS has possession, custody, and/or control of records responsive to Plaintiff's FOIA request.

15. Defendant U.S. Immigration and Customs Enforcement ("ICE") is a

subcomponent of DHS and an "agency" within the meaning of 5 U.S.C. § 5 U.S.C. § 552(f), and 5 U.S.C. § 702. ICE was established within DHS to perform functions including "[t]he detention and removal program," "[t]he intelligence program," and "[t]he investigations program." 6 U.S.C. §§ 251(2)-(4), 252(a)(3). ICE has possession, custody, and/or control of records responsive to Plaintiff's FOIA request.

## III. JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B), and 28 U.S.C. § 1331.

17. This Court has authority to grant declaratory and injunctive relief pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 2201-2202.

18. Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) because Plaintiff Krell resides in and represents this district, the events giving rise to this action occurred in this district, and/or agency records responsive to Plaintiff's request are situated in this district.

19. Defendants are agencies and officials of the United States and are subject to suit in this Court under FOIA.

## IV. FACTUAL BACKGROUND

### A. The August 14, 2026 Attempted Entry into Morris Law Group, PC

20. Morris Law Group, PC is an immigration law firm located at 2414 Del Paso Road in the North Natomas area of Sacramento, California.[1] The firm is owned by attorney Raissa Morris, who has practiced immigration law for fourteen years.[2] The firm assists clients in obtaining citizenship, including asylum seekers

---

[1] Mathew Miranda, Armed Men Claiming To Be ICE Agents Tried To Enter Sacramento Immigration Law Firm, Sacramento Bee (Aug. 17, 2026), https://www.sacbee.com/news/politics-government/capitol-alert/article316885229.html.

[2] Jeannie Nguyen, Natomas Immigration Attorney Says Men Identifying Themselves as ICE Sought Office Access, ABC10 (Aug. 14, 2026), https://www.yahoo.com/news/politics/articles/natomas-immigration-attorney-says-men-010036606.html

and crime victims, and represents more than 2,000 clients.[3] Because many of the firm's clients – particularly victims of crime – are legally permitted to use the firm's office as a safe mailing address, they routinely list 2414 Del Paso Road as their address of record.[4]

21. On Friday, August 14, 2026, at approximately 9:15 a.m., federal agents attempted to enter the offices of Morris Law Group, PC. At least four armed agents arrived in at least four unmarked, solid-black vehicles: a Chevrolet Tahoe, a Dodge Durango, a Ford truck, and a Nissan Pathfinder.[5] Some vehicles had no license plates and had dark-tinted windows. At approximately 9:16 a.m., a member of the firm's staff alerted Ms. Morris by text message that "immigration is here."[6] An armed agent wearing an ICE badge entered the firm's front lobby and asked to speak with an office manager.[7]

22. The agents did not present a search warrant or any other judicial authorization for their attempted entry.[8] The agents stated that they had received a list from Washington, D.C. identifying the firm's address as the primary mailing address for numerous individuals, and asked to inspect the office "for beds" – that is, to walk through the nonpublic areas of the firm in order to determine whether certain individuals they were seeking were living there.[9] Firm staff told the agents that they could not enter without a warrant.[10]

23. When the building's occupants asked the agents to produce judicial authorization, the agents threatened to return in the middle of the night.[11]

---

[3] Esteban Reynoso, Sacramento Immigration Law Firm Says ICE Agents Threatened Illegal Search, KCRA 3 (Aug. 17, 2026), https://www.kcra.com/article/sacramento-immigration-law-firm-ice-agents/73441433; Miranda, Armed Men, supra.
[4] Reynoso, supra; Miranda, Armed Men, supra.
[5] Miranda, Armed Men, supra.
[6] Nguyen, supra.
[7] Id.
[8] *Id*.
[9] Miranda, Armed Men, supra; Reynoso, supra.
[10] Reynoso, supra.
[11] Miranda, Armed Men, supra.

Specifically, an agent stated that, if the agents received follow-up orders, they could return at 3 a.m. and break windows to enter the building. [12]

24. The agents remained at or outside the firm's offices for approximately one hour, waiting in the parking lot, and were turned away multiple times for failing to produce a warrant. They departed only after Daniel Azurduy, the building manager, arrived, told the agents that without a warrant they were trespassing, and threatened to call the police.[13]

25. In a statement, a spokesperson for the U.S. Department of Homeland Security said that ICE officers had approached "an unmarked door," believing it to be a "target address" for individuals they planned to arrest, and departed after learning that the address was a law firm.[14] The firm's exterior, however, displayed the words "Morris Law Group P.C." in large, bold letters above the front door.[15]

26. The Justice Manual maintained by the U.S. Department of Justice contains guidelines governing searches of premises of attorneys who are subjects of investigations. Those guidelines call for close control because a search may affect legitimate attorney-client relationships and encounter privileged material, favor less intrusive alternatives where appropriate, and require approval by the United States Attorney or the pertinent Assistant Attorney General before applying for a search warrant. *See* Justice Manual § 9-13.420.

27. The attempted entry into a law firm raised immediate and serious questions about the authority under which ICE acted, the guidance and training its agents received, and the protection of privileged client information, including the personally identifiable information of noncitizen crime victims and survivors.

---

[12] Miranda, Armed Men, supra; Reynoso, supra.
[13] Miranda, Armed Men, supra.
[14] Miranda, Armed Men, supra; Reynoso, supra.
[15] Miranda, Armed Men, supra.

**B. <u>Attorney-Office Protections and ICE's Broader Enforcement Directed at Legal Offices</u>**

28. Federal immigration officers may not enter the nonpublic areas of an office, including a law firm's offices, without the consent of an authorized person or a judicial warrant signed by a judge, and the presence of accompanying state or local law enforcement does not expand ICE's authority to enter nonpublic space.

29. In 2026, DHS publicly expanded ICE's enforcement posture toward immigration attorneys. On May 26, 2026, DHS announced a directive instructing ICE to develop anti-fraud policies enforcing 8 U.S.C. § 1324c(d), stating that, "[a]s a result of this directive, ICE attorneys have greater authority to enforce this law, including enforcement actions against immigration attorneys who file false asylum claims in an immigration court."[16]

30. Federal enforcement directed at offices that provide legal services to immigrants has not been confined to Morris Law Group. In June 2026, three organizations that provide legal aid to unaccompanied migrant children reported that agents from Homeland Security Investigations, a component of ICE, and the Office of Inspector General of the U.S. Department of Health and Human Services attempted to gain access to their Washington, D.C.–area offices without a warrant, in what the groups described as an effort to intimidate legal-services providers.[17] These included the Amica Center for Immigrant Rights, Ayuda, and Kids in Need of Defense.[18]

31. ICE's claimed authority to enter premises without judicial warrants has drawn national attention. As the Associated Press reported, an internal ICE

---

[16] U.S. Dep't of Homeland Sec., *DHS Takes Additional Steps to Crack Down on Asylum Fraud* (May 26, 2026), https://www.dhs.gov/news/2026/05/26/dhs-takes-additional-steps-crack-down-asylum-fraud.
[17] Rebecca Santana & Valerie Gonzalez, Legal Groups That Help Migrant Children Say Law Enforcement Visits Were Attempt at Intimidation, AP News (June 12, 2026), https://apnews.com/article/border-immigration-children-legal-services-homeland-security-investigations-035cd451ecc8449ad0919a02dc141555.
[18] *Id.*

memorandum signed in May 2025 by then-Acting ICE Director Todd Lyons asserted that ICE officers may rely on administrative warrants issued by ICE itself rather than by a court in order to enter premises and conduct immigration arrests of individuals with a final order of removal, and to use force to enter if admittance is refused.[19] Warrantless immigration enforcement has already generated civil-rights litigation.[20]

32. The August 14 attempted entry has prompted congressional oversight. On August 28, 2026, United States Senators Alex Padilla and Adam Schiff, members of the Senate Judiciary Committee, sent a letter to DHS Secretary Mullin and ICE Acting Director Venturella formally demanding an official investigation into ICE's attempted entry into the firm.[21] The Senators wrote that the reporting of the operation was "alarming," that "ICE officers attempted to enter private property unlawfully, with one officer allegedly threatening to return in the early morning hours of the following day and break windows to enter the law firm's premises," and requested "a thorough investigation into this operation, including a review of the officer's conduct, threats made by the Department of Homeland Security and ICE personnel, and timely and comprehensive responses to [their] questions about ICE's perceived authorities to conduct such actions."[22]

33. The State of California has likewise acted to protect those who assist immigrants. On August 22, 2026, the Governor signed Assembly Bill 2624 which goes into effect October 1, 2027, establishing an address-confidentiality program

---

[19] *See* Foley Hoag LLP, Leaked ICE Memo Claims Authority to Enter Private Residences Without Judicial Warrants, JD Supra (Jan. 24, 2026), 2026 WLNR 2334773.
[20] See, e.g., Carvajal-Muñoz v. Ravencamp, No. 26-cv-190 (D. Me. filed Apr. 14, 2026) (alleging that ICE agents arrested a lawful H-1B visa holder without a warrant or probable cause in violation of the Fourth Amendment).
[21] Press Release, Sen. Alex Padilla, Padilla, Schiff Call for Official Investigation into ICE's Attempt to Enter Sacramento Immigration Law Firm (Aug. 28, 2026), https://www.padilla.senate.gov/newsroom/press-releases/padilla-schiff-call-for-official-investigation-into-ices-attempt-to-enter-sacramento-immigration-law-firm/.
[22] Press Release, Sen. Adam Schiff, Sens. Schiff, Padilla Call for Official Investigation into ICE's Attempt to Enter Sacramento Immigration Law Firm (Aug. 28, 2026), https://www.schiff.senate.gov/wp-content/uploads/2026/08/Letter-ICE-letter-re-Morris-Law-Group-.pdf.

for immigration support-service providers and their employees who face threats or harassment.

34. Against this backdrop, the records Plaintiff seeks concerning the authority, guidance, training, and communications behind an attempted warrantless entry into a law firm are of substantial and current public interest.

### C. Plaintiff's FOIA Request and ICE's Refusal to Search

35. On August 17, 2026, Plaintiff submitted a FOIA request to DHS seeking records concerning the August 14, 2026 attempted entry into Morris Law Group, PC (the "FOIA Request"). A true and correct copy of the FOIA Request is attached hereto as **Exhibit A**.

36. The FOIA Request sought seven categories of records, including: (1) all records, communications, training materials, and memoranda providing guidance to DHS agents on conducting search operations involving law firms; (2) guidance on handling the personally identifiable information of individuals identified as crime victims or survivors of trafficking or abuse; (3) all records and correspondence sent by any national DHS office to a local DHS office concerning or directing enforcement-related activity at 2414 Del Paso Road; (4) the names and specific agencies of the agents involved in the August 14 operation and records of their search-and-seizure training; (5) any DHS directives or training specific to noncitizen crime victims and survivors; (6) any guidance or authorization issued to the agents who attempted the search; and (7) any communications about the attempted entrance after the incident.

37. Plaintiff requested a waiver of all fees, explaining that the request was submitted in her official capacity as a public official and that the information sought is in the public interest. Plaintiff also requested expedited processing pursuant to 28 C.F.R. § 16.5(e), citing the urgency of informing the public about actions that may have undermined the freedom from unreasonable search and seizure and access to counsel for her constituents and their family members.

Plaintiff offered to confer to narrow the request and to accept records electronically on a rolling basis.

38. ICE assigned the FOIA Request reference number 2026-ICFO-37852.

39. On or about September 2, 2026, ICE sent Plaintiff a clarification letter asserting that the request was "not sufficiently specific to allow ICE to conduct a focused and reasonable search." ICE asked Plaintiff to identify, among other things, the ICE directorate involved (i.e. Enforcement and Removal Operations or Homeland Security Investigations) as well as the office, unit, operation name, or case number; to narrow the record types and timeframes; and to identify the custodians, communications systems, and search terms ICE should use.

40. On September 10, 2026, Plaintiff responded, expressly reserving her right to the broader request but offering the following clarifications to move the matter forward: (1) a defined time period of August 1 through September 10, 2026; (2) the categories of personnel whose records should be searched, including the agents involved in the August 14 incident, any personnel who planned the attempted entry or participated in a debriefing afterward, any personnel involved in public affairs related to the incident, and the supervisory officers with oversight of the incident; (3) the communications systems to be searched, including ICE email, Teams, text message, or any other messaging or communication system used by ICE personnel; (4) eight specific search terms: "Sacramento," "Morris," "search warrant," "consent," "attorney-client privilege," "law office," "law firm," and "entry"; and (5) a suggested limitation to the devices and communication accounts of the individuals ICE identified as involved. Plaintiff also requested ICE training materials concerning the search of a law firm.

41. On September 13, 2026, ICE unilaterally "administratively closed"

the FOIA Request, asserting that, even with Plaintiff's narrowed date range and proposed search terms, the request still did not identify the ICE directorate, office, unit, operation name, case number, or specific custodians whose records should be searched. ICE further objected that the request asked ICE "to first identify the personnel involved in the incident and then search those individuals' devices and communication accounts."

42. The information ICE demanded – the identities of the agents who attempted the entry, who supervised them, and how they were trained and directed – resides entirely within ICE's own possession. There is no reasonable way for a member of the public to know which ICE personnel participated in the operation, who supervised them, or how they were trained. Requiring a FOIA requester to provide this information before ICE is even willing to conduct a search demonstrates ICE never intended to act in good faith in response to a public official's valid and narrow request.

43. On September 14, 2026, Plaintiff wrote to ICE, explaining that the information ICE demanded was uniquely within the agency's knowledge, offering again to confer to resolve the request, and stating that, if ICE refused to conduct a search as FOIA requires, she would have no choice but to file suit to enforce her rights. Plaintiff requested a response by September 21, 2026.

44. ICE did not conduct any search, produced no records, and never ruled on Plaintiff's requests for expedited processing or a fee waiver.

45. Despite Plaintiff's repeated efforts to clarify and narrow the FOIA Request, Defendants have produced no records and made no substantive determination within FOIA's statutory deadlines. Defendants' course of conduct reflects a strategy to delay, deny, and refuse to search.

## V. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### VIOLATION OF THE FREEDOM OF INFORMATION ACT (5 U.S.C. § 552)

46. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

47. The requested records are "agency records" within the meaning of FOIA because they were created by or obtained by DHS or ICE personnel and are maintained in Defendants' possession, custody, and/or control in the course of official business.

48. The FOIA Request reasonably describes the records sought. A request reasonably describes records when the description would enable a professional employee familiar with the subject area to locate the records with a reasonable amount of effort. *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978). Plaintiff identified a single, discrete event, namely the attempted entry into Morris Law Group, PC, at 2414 Del Paso Road on August 14, 2026, along with a defined date range, the categories of personnel involved, the communications systems to be searched, and eight specific search terms.

49. Federal agencies must construe FOIA requests liberally in favor of disclosure, and the reasonable-description requirement may not be used as a means of withholding records. *Truitt v. Dep't of State*, 897 F.2d 540, 544–45 (D.C. Cir. 1990).

50. An agency may not refuse to search files likely to contain responsive records solely on the ground that the request does not reasonably describe them, and it may not invoke that requirement without first making a good-faith effort to help the requester satisfy it. *Truitt*, 897 F.2d at 541.

51. It is the agency, not the requester, that bears responsibility for identifying the custodians and search terms used to locate responsive records,

because agencies are ordinarily in the best position to make those choices using their unique knowledge of how they keep their own files. *Inter-Coop. Exch. v. U.S. Dep't of Commerce*, 36 F.4th 905, 911, 914 (9th Cir. 2022).

52. By demanding that Plaintiff identify the ICE directorate, office, unit, operation name, case number, and specific custodians, and by refusing to search on the ground that she could not identify such details, Defendants failed to conduct a search reasonably calculated to uncover all responsive records, in violation of 5 U.S.C. § 552(a)(3), and cannot carry their burden of demonstrating the adequacy of any search "beyond material doubt." *Transgender L. Ctr. v. U.S. Immigr. & Customs Enf't*, 46 F.4th 771, 779 (9th Cir. 2022).

53. Defendants further violated FOIA by failing to make a timely determination whether to comply with the FOIA Request. An agency must make and communicate that determination within twenty working days, and an administrative closure for lack of specificity is not a determination. 5 U.S.C. § 552(a)(6)(A)(i).

54. Because Defendants did not make a legally sufficient determination before Plaintiff filed suit, Plaintiff constructively exhausted her administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i); *Corbett v. Transportation Sec. Admin.*, 116 F.4th 1024, 1026, 1031 (9th Cir. 2024).

55. Defendants also failed to rule on Plaintiff's request for expedited processing within ten calendar days, as required by 5 U.S.C. § 552(a)(6)(E)(ii)(I) and 6 C.F.R. § 5.5(e) (*See also* 28 C.F.R. § 16.5(e)). Plaintiff's request satisfied the "compelling need" standard because it was made by a person engaged in disseminating information to inform the public about actual or alleged federal government activity of current exigency, and it involves a matter of widespread and exceptional interest raising questions about the government's integrity that affect public confidence. 5 U.S.C. § 552(a)(6)(E)(v)(II).

56. Defendants likewise failed to rule on Plaintiff's request for a public-

interest fee waiver, even though disclosure of the requested records is likely to contribute significantly to public understanding of the government's operations or activities and is not primarily in Plaintiff's commercial interest. 5 U.S.C. § 552(a)(4)(A)(iii).

57. Defendants have failed to make promptly available any reasonably segregable, non-exempt records responsive to the FOIA Request, as required by 5 U.S.C. § 552(a)(3)(A) and (b), and have offered no justification for withholding any record.

58. Defendants' ongoing failure to comply with FOIA has irreparably harmed Plaintiff and the public by denying timely access to records concerning federal government activity of significant public concern.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. Assume jurisdiction over this matter;

B. Expedite consideration of this case pursuant to 28 U.S.C. § 1657(a);

C. Declare that Defendants' administrative closure of, and refusal to search for records responsive to, the FOIA Request violated FOIA;

D. Order Defendants to grant Plaintiff's request for expedited processing of the FOIA Request and to rule on Plaintiff's request for a fee waiver;

E. Order Defendants to process the FOIA Request immediately and without further delay;

F. Order Defendants to conduct a search reasonably calculated to locate all records responsive to the FOIA Request in accordance with 5 U.S.C. § 552(a)(3);

G. Order Defendants to disclose promptly all responsive, non-exempt records in their entirety and all reasonably segregable, non-exempt parts of other responsive records;

H. Review any and all of Defendants' decisions to redact or withhold information in responsive records as exempt from disclosure;

I. Award Plaintiff costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E);

J. Declare that Defendants' failure to comply with FOIA, its implementing regulations, and their statutory obligations violated Plaintiff's rights; and

K. Grant such other and further relief as the Court may deem just and proper.

## VII. JURY DEMAND

Plaintiff demands trial by jury of all issues so triable as of right.

DATED: September 25, 2026

**SINGLETON SCHREIBER, LLP**

*/s/ Andrew D. Bluth*
Andrew Bluth (SBN 232387)
1414 K St Ste 300
Sacramento, CA 95814-3966
Telephone: 916-775-5894
abluth@singletonschreiber.com

Maggy Krell (SBN 226675)
3053 Freeport Blvd. #152
Sacramento, CA 95818
maggykrell@gmail.com

*Attorneys for Plaintiff*